UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
Plaintiff,
v.
TONY LOMELI,
Defendant.

Case No.: 3:12-cr-02791-JAH

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**[ECF No. 1020]**

Pending before the Court is Defendant Tony Lomeli's ("Defendant") Motion for Compassionate Release. *See* ECF No. 1020 ("Motion"). Defendant seeks a reduction in sentence from 312 months to 180 months or, in the alternative, to any amount below 312 months. Mot. at 44. The United States of America (the "Government") filed a response in opposition and Defendant has filed a reply. *See* ECF Nos. 1026, ("Opposition"), 1028 ("Reply").

Having carefully considered the Motion, exhibits, and responses, the Court HEREBY ORDERS Defendant's Motion is **DENIED** for the reasons set forth below.

**BACKGROUND**

On September 28, 2012, a grand jury returned a five-count Superseding Indictment charging Defendant with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2); and Conspiracy to Distribute Methamphetamine, in violation of

21 U.S.C. §§ 841(a)(1) and 846. *See* ECF No. 24. On May 30, 2014, a jury found Defendant guilty of Unlawful Possession of a Firearm and guilty of Conspiracy to Distribute Methamphetamine. *See* ECF No. 588. On December 5, 2014, the Court imposed a sentence of 312 months, and 120 months in custody, with the sentences to run concurrently. *See* ECF No. 779.

On July 2, 2020, Defendant filed his first motion for compassionate release. Defendant's request was based on his potential exposure to COVID-19 and allegations he was housed with inmates who have tested positive for COVID-19. *See* ECF No. 909. On February 9, 2021, this Court denied Defendant's motion for failure to provide "extraordinary and compelling reasons" warranting a reduction in his sentence in light of Defendant's self-reported good health. ECF No. 920 at 4.

On June 27, 2022, Defendant filed a renewed motion for compassionate release. Defendant's request was based on his hypertension, obesity, high cholesterol, and his general concerns regarding potential exposure to COVID-19. *See* ECF No. 933. On November 7, 2022, the Court denied Defendant's renewed motion for failure to provide an "extraordinary and compelling reason" warranting relief. *See* ECF No. 948.

Defendant now moves for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), asserting that a combination of the following factors constitutes the requisite "extraordinary and compelling reasons" for relief: (1) an "unusually long sentence" pursuant to a change in the mandatory minimum sentence for Defendant's conviction from 20 to 15 years; (2) a gross disparity between Defendant's sentence and those of similarly situated offenders; (3) Defendant's medical conditions, specifically, hypertension, hyperlipidemia, and high cholesterol; and, (4) the harsh conditions of confinement experienced during COVID-19. *See generally* Mot. Defendant requests the Court consider his rehabilitative efforts while in custody alongside Defendant's alleged claims for relief. *See id.*

## LEGAL STANDARD

A federal court "may not modify a term of imprisonment once it has been imposed,"

unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. 18 U.S.C. § 3582(c)(1)(B). Under 18 U.S.C. § 3582(c)(1)(A)(i), a court has "discretion to grant a prisoner compassionate release when certain conditions are met." *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021). The First Step Act provides defendants with two direct routes to seek a reduction directly from the court: (1) file a motion after "fully exhaust[ing] all administrative rights to appeal a failure of the [Bureau of Prisons] to bring a motion on the defendant's behalf," or (2) file a motion after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (citing Pub. L. No. 115-391, Title VI, sec. 603(b)(1), § 3582, 132 Stat. 5194, 5239 (2018)).

Upon a properly exhausted motion, the Court may reduce a sentence if it finds that 1) "extraordinary and compelling reasons warrant a sentence reduction;" 2) a reduction is "consistent with applicable policy statements issued by the Sentencing Commission;" and, 3) "the requested sentence reduction is warranted under the particular circumstances of the case" pursuant to the factors set forth in 18 U.S.C. § 3553(a). *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022) (internal citations and quotations omitted). "Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." *Id.* Accordingly, "a district court that properly *denies* compassionate release need not evaluate each step." *Keller*, 2 F.4th at 1282 (explaining that "a district court must [only] perform this sequential inquiry before it *grants* compassionate release").

As the movant, Defendant bears the burden to establish that he is eligible for compassionate release. *Wright*, 46 F.4th at 951.

## DISCUSSION

### A. Exhaustion of Administrative Remedies

A court may reduce a term of imprisonment "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on

the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This "administrative exhaustion requirement is mandatory and must be enforced when properly raised by the government." *Keller*, 2 F.4th at 1282.

Here, Defendant requested a sentence reduction from the warden at the Federal Correctional Complex Lompoc I ("FCI Lompoc"), where Defendant is serving his sentence, and received a notice of denial from the Office of the Warden on July 16, 2021. *See* ECF No. 1020-1, Exh. E, at 74. Seeing no objection by the Government, and given that more than 30 days have elapsed since Defendant received the notice of denial from the warden, the Court finds that Defendant has properly satisfied the requirement that he exhaust any available administrative remedies prior to filing the instant Motion. Accordingly, the Court proceeds to review Defendant's motion on the merits.

**B. <u>Extraordinary and Compelling Reasons Warranting Compassionate Release</u>**

A district court has discretion to "reduce the term of imprisonment" if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). Although the statute does not define "extraordinary and compelling reasons," the U.S. Sentencing Commission has limited such reasons to six categories of circumstances, including: serious medical conditions, advanced age, family circumstances, abuse while in custody, a catch-all "other reasons," and an unusually long sentence. *See* U.S.S.G. 1B1.13. For purposes of evaluating a request for compassionate release, "the term 'extraordinary' means 'most unusual,' 'far from common,' or 'having little or no precedent,'" while "'compelling'[] means 'tending to convince or convert by or as if by forcefulness of evidence.'" *Rutherford v. United States*, 146 S. Ct. 1320, 1330 (2026). Together, "'extraordinary and compelling' reasons for compassionate release are those that are especially unusual and convincing." *Id.*

Here, Defendant argues that the following are "extraordinary and compelling reasons" that warrant compassionate release: 1) unusually long sentence; 2) sentencing disparities with similarly situated individuals; 3) medical conditions; 4) unusually harsh

conditions of confinement occasioned by the COVID-19 global pandemic; and 5) significant rehabilitation efforts when considered in combination with the other extraordinary and compelling reasons. *See* Mot. at 12–34. Defendant argues that, even if the Court does not consider any one of these reasons, independently, as extraordinary and compelling, Defendant presents a combination of circumstances that, when taken together, justify reducing his sentence to 180 months. *See* Mot. at 35.

The Government opposes, arguing that even when considered together, Defendant's arguments fail to establish "extraordinary and compelling reasons" warranting release. *See* Opp'n at 14–31. The Government also objects that Defendant remains a danger to the community such that releasing Defendant would be inconsistent with the need to protect the public. *See* Opp'n at 32–34.

**1. Unusually Long Sentence**

Defendant argues that he received an "unusually long sentence" which may establish an extraordinary and compelling reason for a reduced sentence. *See* Mot. at 12–15. Defendant argues that, pursuant to the U.S. Sentencing Commission's 2023 amendment to Section 1B1.13's policy statement, the Court must consider the First Step Act's change in the mandatory minimum sentencing structure as a factor in determining whether Defendant's sentence was "unusually long." *See id.*; Reply at 5–28. The Government opposes, arguing the Sentencing Commission's amendment is invalid as contrary to the will of Congress and is therefore inapplicable.[1] *See* Opp'n at 10–26.

In the First Step Act, Congress amended § 841(b) to provide for a 15-year mandatory minimum rather than 20-year. In § 401(c) of the Act, Congress made that amendment applicable to defendants "if a sentence for the offense has not been imposed as of such date of enactment," meaning that the change would not apply retroactively to sentences imposed

---

[1] The Court notes that as of the date of the parties' filings, the U.S. Supreme Court had not yet issued its ruling in *Rutherford v. United States*, 146 S. Ct. 1320 (2026), directly weighing on this issue.

before the Act's enactment. § 401(c), 132 Stat. 5221. However, the Sentencing Commission's amendments to Section 1B1.13 allowed consideration of changes in law, with certain limitations, when determining whether a defendant has presented an extraordinary and compelling reason for a sentence reduction. Those changes, reflected in new subsections (b)(6) and (c) and which are now applicable to defendant-filed motions, purported to allow courts to consider changes in law that Congress had expressly chosen not to make retroactive:

> (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

> (c) Limitation on Changes in Law.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; *see* U.S.S.G. § 1B1.13(b)(6), (c).

On May 28, 2026, the U.S. Supreme Court invalidated the Commission's amended policy statement as conflicting with the statute to the extent the amendment maintains that sentencing disparities created by Congress's amendment to § 924(c) satisfy the definition of "extraordinary and compelling." *See Rutherford*, 146 S. Ct. at 1330. The Supreme Court held that where Congress makes nonretroactive amendments to criminal penalties, "the fact that a preamendment sentence is longer than it would have been postamendment is not an extraordinary and compelling reason that warrants a sentence reduction" under 18

U.S.C. § 3582(c)(1)(A)(i). *Id.* (explaining that "nonretroactive amendments to criminal penalties are the norm" such that the resulting "disparity . . . is the default") (internal citations and quotations omitted). Accordingly, the Supreme Court held that a nonretroactive change in the law "considered by itself or in combination with other factors—cannot make a prisoner eligible for compassionate release" under 18 U.S.C. § 3582(c)(1)(A)(i). *Id*. at 1335; *see also id*. at 1333 (distinguishing *Concepcion v. United States*, 597 U.S. 481 (2022), cited by Defendant, which held "a court could consider changes to the Guidelines, as well as intervening facts, when calculating a new sentence under it" because *Concepcion* involved "sentence-modification proceedings under a different provision of the Act").

Here, Defendant argues that his "sentence became unusually long and disparate after the First Step Act was passed." Mot. at 18. Defendant's argument that he received an unusually long sentence is based entirely on the sentencing disparities created by the change in law pursuant to the passage of the First Step Act.[2] Thus, consistent with the Supreme Court's holding in *Rutherford*, which expressly abrogated the cases relied on by Defendant,[3] the Court will not consider the changes to criminal penalties made under the First Step Act for purposes of determining whether an extraordinary and compelling reason exists to grant Defendant's request for a sentence reduction pursuant to 18 U.S.C. §

---

[2] Because Defendant's argument regarding sentencing disparities is premised on the Court's consideration of changes in the law created by the First Step Act, the Court finds it unnecessary to address this argument separately from Defendant's argument regarding an unusually long sentence. *See* Mot. at 15; *see also Rutherford*, 146 S. Ct. at 1331 n.6 (declining to consider "whether compassionate release is available for [other] kinds of postjudgment developments").

[3] *See Rutherford*, 146 S. Ct. at 1328 n.2 (abrogating *United States v. Chen*, 48 F.4th 1092, 1094–1101 (9th Cir. 2022); *United States v. McCoy*, 981 F.3d 271, 284–288 (4th Cir. 2020); *United States v. Ruvalcaba*, 26 F.4th 14, 24–28 (1st Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1045–1048 (10th Cir. 2021)).

3582(c)(1)(A)(i).[4]

**2. Medical Circumstances**

Next, Defendant argues that his hypertension, hyperlipidemia, and chondrocalcinosis medical conditions, when considered individually or in combination with the conditions of confinement occasioned by COVID-19 pandemic, present "extraordinary and compelling reasons" that justify a reduced sentence. *See* Mot. at 20–38. In opposition, the Government objects that this Court previously considered and rejected these nearly identical reasons and further argues that these circumstances are even less compelling now that the risk of COVID-related complications associated with certain health conditions has subsided. *See* Opp'n at 28.

Under § 1B1.13(b)(1), "extraordinary and compelling reasons" can be based on the "Medical Circumstances of the Defendant." U.S.S.G. § 1B1.13(b)(1). Relevant here, a defendant's medical circumstances constitute "extraordinary and compelling reasons" where:

1) "The defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;"
2) "The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death;" and,

---

[4] Although Defendant also argues that, "[e]ven if not an extraordinary and compelling reason, this Court should still consider the effect of the First Step Act under § 3553(a)," Mot. at 19, the Court need not consider any of the § 3553(a) factors until after Defendant establishes "extraordinary and compelling" reasons that warrant compassionate release. *See Rutherford*, 146 S. Ct. at 1333. (explaining that eligibility for compassionate release depends on "whether the [prisoner] can offer 'extraordinary and compelling' reasons that 'warrant' compassionate release, not on the § 3553(a) factors").

3) "The defendant presents the following circumstances--

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner."

U.S.S.G. § 1B1.13(b)(1)(B)–(D).

In support of his Motion, Defendant provides excerpts of medical records spanning from 2021-2024. The records reflect that Defendant has been consistently prescribed medication to alleviate his diagnosis of primary hypertension from 2022-2024. *See* ECF No. 1023 at 15, 20, 25, 31, 35–36. Primary hypertension, or high blood pressure, is common in the United States and is reversible with medications and lifestyle changes.[5] From 2021-2024, Defendant has also been prescribed medication to treat hyperlipidemia. *See* ECF No. 1023 at 9, 16, 20, 25, 28, 31, 35–36, 42. Hyperlipidemia, or high cholesterol, is also common in the United States and is manageable with diet, exercise, and in some cases medications.[6] Finally, from 2021-2022, Defendant also suffered from

---

[5] *See High Blood Pressure Facts*, U.S. Ctrs. for Disease & Control Prevention ("CDC") (June 2, 2026), https://www.cdc.gov/high-blood-pressure/data-research/facts-stats/ ("Nearly half of adults have high blood pressure (48.1%, 119.9 million)"; *Primary Hypertension (Formerly Known as Essential Hypertension)*, Cleveland Clinic (Oct. 26, 2021), https://my.clevelandclinic.org/health/diseases/22024-primary-hypertension-formerly-known-as-essential-hypertension.

[6] *See High Cholesterol Facts*, CDC (Oct. 24, 2024), https://www.cdc.gov/cholesterol/data-research/facts-stats/index.html ("About 86 million US adults age 20 or older have total cholesterol levels above 200 mg/dL."); *Hyperlipidemia*, Cleveland Clinic (Feb. 10, 2026), https://my.clevelandclinic.org/health/diseases/21656-hyperlipidemia.

chondrocalcinosis in his left knee. *See* ECF No. 1023 at 4–6, 19. Chondrocalcinosis[7] is a common form of arthritis which may be present even when asymptomatic.[8] Although the record reflects Defendant has had pain in his left knee until from 2021-2024, Defendant's medical records largely indicate a diagnosis of osteoarthritis—the most common form of arthritis[9]—and do not report the presence of chondrocalcinosis past the last documented date of September 2022. *See* ECF No. 1023 at 4, 6, 8, 19–20, 30–31, 33–35. Defendant's knee pain has been managed with medication, use of a knee brace, light seated exercises, and special accommodations such as a lower bunk, limited physical movement, and work restrictions. *See* ECF No. 1023 at 4, 6, 8, 30, 37, 41.

As an initial matter, the Court agrees with the Government that this Court has already considered and rejected primary hypertension as a basis for a sentence reduction. *See* ECF No. 948. Given that neither Defendant nor the record identify a change in Defendant's hypertension diagnosis, the Court finds no reason to reconsider its previous finding that, absent more, Defendant's medical condition of hypertension is not sufficient for the Court to grant a sentence reduction. *Id.* at 5.

---

[7] Chondrocalcinosis is also known as calcium pyrophosphate deposition (CPPD) disease or pseudogout. *See Pseudogout (Chondrocalcinosis or CPPD)*, Cleveland Clinic (May 28, 2024), https://my.clevelandclinic.org/health/diseases/pseudogout-chondrocalcinosis-cppd ("Pseudogout is arthritis that causes sudden flares of pain, swelling and stiffness in your joints.").

[8] According to sources cite by Defendant, CPPD is "the third most common form of inflammatory arthritis." *See* Mot. at 21 n.38 (citing Edgar A. Zamora & Roopa Naik, *Calcium Pyrophosphate Deposition Disease*, Nat'l Libr. of Med. (June 20, 2023), https://pubmed.ncbi.nlm.nih.gov/30986010/); Mot. at 21 n.39 (citing Shumaila M. Iqbal et al., *Updated Treatment for Calcium Pyrophosphate Deposition Disease: An Insight*, 11 Cureus 1, 6 (2019) (explaining that "CPPD can manifest as different kinds of arthritis, which may be symptomatic or asymptomatic")).

[9] *See Osteoarthritis*, Cleveland Clinic (Sept. 15, 2026), https://my.clevelandclinic.org/health/diseases/5599-osteoarthritis ("Osteoarthritis is the most common type of arthritis.").

As to hyperlipidemia and chondrocalcinosis, Defendant concedes that he has managed the conditions with medications, diet, and exercise. Mot. at 20–21. Defendant argues, however, that his ability to manage these conditions is inconsistent due to limited and unpredictable yard time that makes it difficult for Defendant to comply with his doctors' exercise recommendations. Mot. at 21. The Court finds no support in the record that Defendant's medical conditions warrant a reduction in sentence.

In addition, Defendant has failed to establish that these medical conditions fall within the categories outlined by the Sentencing Commission. Although Defendant alleges that yard access and in-unit exercise is only permitted at the discretion of the correctional officers, Defendant does not allege that correctional officers have denied Defendant access or otherwise prohibited Defendant from in-unit exercise. Thus, Defendant's ability to provide self-care is not substantially diminished by the nature of the conditions themselves, but rather due to limited and inconsistent access to recreational activities.

The record also supports the Court's finding that Defendant has not alleged how his medical conditions require "long-term or specialized medical care that is not being provided." To the contrary, the record reflects that Defendant has managed the conditions with medication, that Defendant is recommended limited physical movement due to his knee pain, and that Defendant "is currently in good health and not reliant on regular medication." *See* ECF No. 1023 at 40– 41; ECF No. 1020-1 at 63. Nor has Defendant presented evidence showing that FCI Lompoc "is affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency." Although Defendant presented evidence that FCI Lompoc suffered from a COVID-19 outbreak in 2020, Defendant has provided no evidence showing that those conditions existed at the time Defendant filed his Motion,[10] or that Defendant's medical

[10] Defendant is currently housed at facility code "LOX" (FCI Lompoc I), which had a total of 1,712 reported COVID-19 cases and six COVID related deaths, but only one active case among the inmate population as of January 21, 2025. *See Inmate COVID-19 Data*, Federal

conditions place him at increased risk of medical complications from COVID-19.[11] *See generally* ECF No. 2020-1 at Exhs. K–M; ECF No. 2023 at Exhs. N–O. Thus, the Court has found no support for Defendant's claims that "the conditions of his confinement have and will only serve to further exacerbate the deterioration of his physical health." Mot. at 21–22.

Because there is no evidence in the record that Defendant's medical conditions substantially diminish Defendant's ability to provide self-care, require long-term or specialized medical care *that is not being provided*, or that the conditions place Defendant "at increased risk of suffering severe medical complications or death as a result of exposure to an *ongoing outbreak* of infectious disease," the Court holds that Defendant's medical conditions do not qualify as "extraordinary and compelling reasons" warranting a sentence reduction.

Defendant has also failed to show that, when considered together, the medical conditions otherwise present "extraordinary and compelling reasons" warranting a sentence reduction given that Defendant's medical conditions involve common ailments that can be treated with an ordinary standard of medical care.[12] *See Rutherford*, 146 S. Ct.

---

Bureau of Prisons (Jan. 21, 2025), https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData.

[11] The Court also notes that the record shows that, from 2021-2022, Defendant was repeatedly offered but has rejected the COVID-19 vaccine "for personal reasons." *See* ECF No. 1023 at 24, 30, 34, 37. Thus, even if Defendant could show that his medical conditions increase his risk of serious illness from COVID-19, Defendant must explain the impact of such risks within the context of his decision not to vaccinate against COVID-19.

[12] Although Defendant cites *United States v. Aaigbekaen*, No. JKB-15-0462, 2025 WL 1347054, at *3 (D. Md. May 8, 2025), the Court finds that case is distinguishable from the facts at issue here because that case involved evidence showing that "BOP [was not] capable of providing [defendant] with the much-needed mental health treatment and medical care required to adequately treat these conditions," and that "Failure to treat these conditions may result in a permanent worsening of [defendant]'s mental illness, cognitive deficits, and physical health." *Id.* at *7–9. Here, Defendant has not provided the Court with evidence indicating similar concerns regarding Defendant's standard of care,

at 1332 ("A reason is 'extraordinary' and 'compelling' only if it is sufficiently unusual and convincing to 'warrant' compassionate release.").

**3. Other Reasons**

The Court adopts its previous holdings denying Defendant's motions in finding that general concerns about COVID-19 exposure is not a valid basis for reducing Defendant's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* ECF Nos. 920, 948. To the extent Defendant argues that "unusually harsh conditions of confinement occasioned by the COVID-19 global pandemic is an extraordinary and compelling reason" that merits a sentence reduction, Mot. at 23–24, the Court finds no support for Defendant's argument in the absence of other conditions outlined in the Sentencing Commission's policy statement. *See Rutherford*, 146 S. Ct. at 1332 (holding that a district court cannot consider "all other relevant information" because "extraordinary and compelling reasons" "are not so flexible as to encompass any consideration").

**4. Rehabilitation Efforts**

Similarly, absent other qualifying conditions, Defendant's rehabilitation efforts alone cannot establish "extraordinary and compelling reasons" to grant a reduction in sentence under the statute:

> [R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(d).

Here, the Court has already determined that Defendant has failed to establish a valid basis for a sentence reduction. Although Defendant's rehabilitation efforts are laudable, they are not sufficient by themselves, or in combination with other circumstances on the current record, to establish "extraordinary and compelling reasons" under the statute.

---

including the possibility of permanent damage from his lack of such care.

Accordingly, the Court will not consider Defendant's rehabilitation efforts evaluating the merits of Defendant's Motion.

For the reasons discussed above, the Court finds that Defendant has not met his burden of showing "extraordinary and compelling reasons" that merit a sentence reduction.

**C. <u>§ 3553(a) Factors</u>**

"Before determining the extent of a reduction based on the § 3553(a) factors, a court must first ensure that a movant is part of the limited class of prisoners who are eligible for such a reduction." *Rutherford,* 146 S. Ct. at 1333 (explaining that eligibility "depends on whether [a defendant] can offer 'extraordinary and compelling' reasons that warrant compassionate release, not on the § 3553(a) factors"). Accordingly, the Court need not consider Defendant's arguments as to the § 3553(a) factors given the Court's holding that Defendant has failed to establish his eligibility for a sentence reduction under the statute. *See Keller*, 2 F.4th at 1282.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's Motion for Compassionate Release is **DENIED**.

IT IS SO ORDERED.

DATED: August 28, 2026

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE